UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

   Plaintiff,

 v.

SPYRIDON ADONDAKIS,
ANTHONY CHIASSON,
SANDEEP GOYAL,
JON HORVATH,
DANNY KUO,
TODD NEWMAN,
JESS TORTORA,
DIAMONBACK CAPITAL MANAGEMENT, LLC,
and
LEVEL GLOBAL INVESTORS, L.P.

   Defendants.

Civil Action No. 12-cv-0409 (SAS)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JOINT MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Gregory Morvillo<br>MORVILLO LLP<br>One World Financial Center<br>200 Liberty Street, 27th Floor<br>New York, NY 10017<br>Tel: 212-379-2081 | Stephen Fishbein<br>John A. Nathanson<br>Brian P. Calandra<br>SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, NY  10022-6069<br>Telephone: 212.848.4000<br>Facsimile: 212.848.7179 |
| *Attorneys for Defendant Anthony Chiasson* | *Attorneys for Defendant Todd Newman* |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Todd Newman and Anthony Chiasson (the "Defendants"), respectfully submit this memorandum of law in support of their joint motion for summary judgment (the "Motion") with respect to the claims brought by the Securities and Exchange Commission (the "SEC") against them in a complaint dated January 18, 2012 (the "Complaint").  The Motion is also supported by Defendants' Statement of Undisputed Facts Pursuant to Rule 56.1, dated October 13, 2015, and the Declaration of John A. Nathanson dated October 13, 2015 (the "Nathanson Decl.") and the exhibits annexed thereto.

## PRELIMINARY STATEMENT

Newman and Chiasson are entitled to summary judgment because the Second Circuit in a parallel criminal action involving the same facts ruled that the evidence was legally insufficient, under any applicable standard of proof, to establish two essential elements of an insider trading violation.  *United States v. Newman*, 773 F.3d 438, 442 (2d Cir. 2014) *cert. denied*, (U.S. Oct. 5, 2015).  This is not a case where the Court must determine how an authoritative legal standard applies to a new set of facts.  This is a case where the Court of Appeals, in a parallel case based on the same facts, has already determined that the evidence is insufficient as a matter of law.

The Complaint alleges that the Defendants engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, as well as Section 17(a) of the Securities Act of 1933 (the "Securities Act"). (Compl. ¶¶ 126, 134, 137.)  To prevail, the SEC must prove, among other things, that the Defendants traded on confidential information disclosed by a corporate insider in exchange for a personal benefit and that the Defendants knew of such a benefit.  *See Newman*, 773 F.3d at 447 (listing elements of insider trading under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder); *S.E.C. v. Lyon*, 529 F. Supp. 2d 444, 453 (S.D.N.Y. 2008) (Section 17(a) of the

Securities Act and Section 10(b) of the Exchange Act require proof of "essentially the same elements")[1] (citation omitted).  The SEC brought this civil action in parallel to a criminal action brought by the United States against the same defendants, alleging the same facts.  *See United States v. Newman*, No. 2012-cr-121 (S.D.N.Y.).  After a comprehensive review of the factual record in the criminal action, the Second Circuit held as a matter of law that the insiders in this case had not disclosed confidential information in exchange for a personal benefit and, regardless, that the Defendants neither knew nor deliberately avoided knowing of any such benefit.  *See Newman*, 773 F.3d at 442.  While the Second Circuit was writing in a criminal case, its holding was based on the legal consequences of the same facts, viewed most favorably to the government, that are at issue here.  Its holding was not based on the level of certainty with which the government had proved those facts.  Because there is insufficient factual support for two necessary elements of the SEC's claims under any standard of proof, the Defendants are entitled to summary judgment.

## RELEVANT FACTUAL BACKGROUND

On January 18, 2012, Newman and Chiasson were indicted for insider trading.  *Newman*, 773 F.3d at 443.  The SEC instituted this parallel civil action against the Defendants on the same day.  *See* Compl.  The indictment and the Complaint each alleged that the Defendants traded the shares of two technology companies, Dell and NVIDIA, on the basis of confidential information that the Defendants had received third- or fourth-hand.  Compl. ¶¶ 4, 6, 7, 12; *Newman*, 773 F.3d at 443.

---

[1] Claims under Sections 17(a)(2)–(3) of the Securities Act are different because they do not require proof of scienter. *See S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).  That distinction is irrelevant here because, as described in Section I, *infra*, the SEC's claims under Sections 17(a)(2)–(3) fail as a matter of law since the insiders in this case did not disclose confidential information in exchange for a personal benefit.

The Defendants received the information related to Dell after a member of Dell's Investor Relations department, Rob Ray, disclosed information to Neuberger Berman analyst Sandy Goyal. Compl. ¶ 2; Nathanson Decl. Ex. E at Tr. 1375-1378, 1400. Goyal gave the information to Jesse Tortora, an analyst who worked for Newman at Diamondback Capital Management. Compl. ¶¶ 3–4; Nathanson Decl. Ex. A at Tr. 135-36, 144. Tortora then gave the information to both Newman and Spyridon Adondakis, an analyst who worked for Chiasson at Level Global Investors, L.P. Compl. ¶¶ 4, 6; Nathanson Decl. Ex. G at 1672, 1710. Adondakis in turn gave the information to Chiasson. Compl. ¶ 7; Nathanson Decl. Ex. G at 1711.

The information Ray disclosed was similar to information Dell had previously disclosed to analysts in advance of financial reports or other events. *See, e.g.*, Nathanson Decl. Exs. C at 567-598, 697-704, 717-726; J; K; L; M.

The government claimed that Ray had disclosed confidential information in exchange for career advice from Goyal. Goyal testified that this "advice" was of the kind he routinely gave to industry colleagues. Ex. F at 1513-16. He further testified that he would have given advice to Ray even if Ray had not disclosed any information. *Id*.

While Tortora knew Goyal received information from a Dell employee, Tortora did not learn Ray's name or title, how Ray and Goyal knew each other, or that Goyal gave Ray career "advice." Nathanson Decl. Ex. A at Tr. 156–57; C at Tr. 603. Likewise, Adondakis knew nothing about Ray or his relationship with Goyal. Nathanson Decl. Ex. H at Tr. 2217-19.

Rob Ray has never been charged with a crime in connection with this case. *Newman*, 773 F.3d at 443.

The Defendants were also far removed from the insider who disclosed confidential information about NVIDIA. The NVIDIA information came from a NVIDIA employee, Chris

Choi. Choi worked in NVIDIA's finance department and gave information about NVIDIA to Hyung Lim, an employee of another technology company who was a member of the same church as Choi. Nathanson Decl. Ex. I at Tr. 3009, 3032. The information disclosed by Choi was similar to information that NVIDIA disclosed to analysts from time to time. Nathanson Decl. Exs. D at Tr. 1006-13; N; O. Lim gave the information to Danny Kuo, an analyst at Whittier Capital, who gave the information to Tortora and Adondakis, who gave the information to Newman and Chiasson, respectively. Nathanson Decl. Ex. D at Tr. 993; Ex. G at 1870, 1878-79; Ex. I at Tr. 3009.

Lim testified that he did not give anything to Choi in exchange for the information he received. Nathanson Decl. Ex. I at Tr. 3067–68. Tortora and Adondakis did not have any understanding of the relationship between Choi and Lim. Nathanson Decl. Ex. D at Tr. 994; Ex. G 1878-79; H at Tr. 2233-34.

Chris Choi has never been charged with a crime in connection with this case. *Newman*, 773 F.3d at 443.

## RELEVANT PROCEDURAL HISTORY

Both at the beginning and end of the trial, *id.* at 444, the Defendants argued that the government must prove that the Defendants knew that the insiders had received a personal benefit in exchange for providing the information at issue and that the government had failed to elicit any proof of such knowledge. Over the Defendants' objection, the trial court held that the government did not have to prove that the Defendants knew that the insiders had received a personal benefit and instructed the jury accordingly. *Id.* On December 17, 2012, the jury found Defendants guilty on all counts.

On appeal, the Defendants challenged the trial court's decision not to charge the jury on

knowledge of personal benefit, as well as the insufficiency of the evidence of that element. Newman also briefed, and Chiasson joined, a challenge to the failure of proof of personal benefit itself. On December 10, 2014, a Second Circuit panel unanimously reversed the Defendants' convictions and directed the dismissal of their indictments with prejudice. *Newman*, 773 F.3d at 443. The panel first held that the government indeed must prove that "the tippee knew that an insider disclosed confidential information and that he did so in exchange for a personal benefit." *Id.* at 442. The panel then held that an inference that a tipper received a benefit based on the relationship between the tipper and the tippee is impermissible unless there is proof of "a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *Id.* at 452.

The Second Circuit then reviewed the factual record as developed by the government over the six-week trial founded on the same allegations at issue here. First, the panel held that, as a matter of law, "[t]he circumstantial evidence in this case [is] simply too thin to warrant the inference that the corporate insiders received any personal benefit in exchange for their tips." *Id.* at 451-52. Specifically, the panel held that Goyal's career "advice" to Ray was not consequential, and that Choi and Lim were no more than "casual acquaintances." *Id.* The court next addressed the sufficiency of the evidence regarding the Defendants' knowledge of the personal benefit and held, as a separate and independent basis for its decision, that "the Government presented absolutely no testimony or any other evidence that Newman and Chiasson knew that they were trading on information obtained from insiders, or that those insiders received any benefit in exchange for such disclosures, or even that Newman and Chiasson consciously avoided learning of these facts." *Id.* at 453. Since there was no evidence that either

Ray or Choi received a personal benefit, and no evidence that Newman and Chiasson knew or consciously disregarded knowing about any benefit to Ray or Choi, had such benefits in fact existed, the panel overturned the Defendants' convictions and ordered the district court to dismiss the indictment with prejudice. *Id.* at 455.

Following the Defendants' criminal convictions, the Honorable Harold Baer had entered partial summary judgment against the Defendants in this action based solely on the collateral estoppel effect of their convictions. J. as to Def. Newman, Oct. 13, 2013, ECF No. 91; J. as to Def. Chiasson, Oct. 13, 2013, ECF No. 92. After the panel decision overturned the Defendants' convictions, this Court vacated the partial summary judgments, Order, Dec. 23, 2014, ECF 100, and, at the Parties' request, stayed this matter pending the final outcome of the appellate proceedings, Order, Feb. 2, 2015, ECF No. 102 (the "Stay").

The government asked the Second Circuit to rehear the holding in *Newman* concerning the definition of a benefit *en banc*, at the same time abandoning its prior position that a tippee need not know of the personal benefit obtained by the tipper. The Second Circuit denied the request without dissent. *United States v. Newman*, No. 13-1837 L, 2015 WL 1954058 (2d Cir. Apr. 3, 2015). The government then petitioned the Supreme Court for a writ of *certiorari*, also solely on the definition of benefit, but that petition was denied as well. *United States v. Newman*, No. 14A-1264, 2015 WL 4575840 (U.S. Oct. 5, 2015). On October 9, 2015 this Court lifted the Stay, Order, ECF No. 109, and directed the Defendants to file the Motion by October 13, 2015.

## STANDARD OF REVIEW

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although a court on summary judgment must "resolve all

ambiguities and draw all factual inferences in favor of the nonmovant," *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir.2015) (citations and quotation marks omitted), summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## ARGUMENT

I. **As A Matter Of Law, The Insiders Did Not Receive A Personal Benefit In Exchange For Disclosing Confidential Information**

Insider trading liability requires that the insider receive a personal benefit in exchange for disclosing material non-public information. *Dirks v. S.E.C.*, 463 U.S. 646, 662 (1983). Here, the Complaint suggests that the Court should infer that the insiders received a benefit because of the nature of the personal relationships between Ray and Goyal and Choi and Lim. Per the Second Circuit's decision in *Newman*, an inference of a benefit based on those personal relationships is only permissible where there is "proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *Newman*, 773 F.3d at 452.

In deciding *Newman*, the Second Circuit reviewed the extensive factual record developed in the criminal case and concluded that "[t]he circumstantial evidence in this case [is] simply too thin to warrant the inference that the corporate insiders received any personal benefit in exchange for their tips." *Id.* at 451–52. In examining the Dell tips, the panel held that the career "advice" Goyal provided to Ray was not consequential because Goyal began providing it before Ray disclosed any information, Goyal would have provided it whether or not Ray disclosed information, and the "advice" was "little more than the encouragement one would generally expect of a fellow alumnus or casual acquaintance." *Id.* at 453. The panel found even less

evidence of a benefit in connection with the NVIDIA disclosures, because Choi had disclosed confidential information to a casual acquaintance and had received nothing in return. *Id.* In other words, the Second Circuit held that there was no evidence of personal benefit in this case.

That the Second Circuit reached its conclusions in the context of a criminal case with a higher standard of proof does not compel a different result in the instant action. The Second Circuit's decision was based on the Court's assessment that the benefit alleged was insufficient, not that the facts were proved with insufficient certainty. Thus, the Court held that the career "advice" at issue was not sufficiently consequential, not that the government had failed to prove that career advice was given. *See id.* at 452 ("The Government argues that these facts were sufficient to prove that the tippers derived some benefit from the tip. We disagree. If this was a 'benefit,' practically anything would qualify."). Similarly, the Court said that the casual friendship between Choi and Lim was inadequate, not that the government failed to prove the relationship. Thus *Newman* was based on the legal consequences of facts found by the Second Circuit, not on the level of certainty with which the government proved those facts. Since the Second Circuit has already held that the facts here demonstrate that the insiders did not disclose information in exchange for a personal benefit, this Court should find that the SEC cannot prevail on its claims as a matter of law. Accordingly, this case is controlled by the result in *Newman*.

II. **As A Matter Of Law, The Defendants Neither Knew Nor Consciously Avoided Knowing Of Any Benefit To The Insiders**

Defendants are also entitled to summary judgment because there is no evidence that Defendants knew of any benefit to the insiders in this case. *Newman*, 773 F. 3d at 453 ("It is largely uncontroverted that Chiasson and Newman, and even their analysts, who testified as

cooperating witnesses for the Government, knew next to nothing about the insiders and nothing about what, if any, personal benefit had been provided to them.").

As an initial matter, this Court should grant the Motion because the Complaint does not allege that the Defendants knew of any benefit to the insiders. In other words, the Complaint does not address a necessary element, and the Court should dismiss this case. Even were the Complaint's allegations sufficient, however, the Defendants are entitled to summary judgment because the Second Circuit — again, after reviewing the extensive trial record in the parallel criminal case — found that "the Government presented absolutely no testimony or any other evidence that Newman and Chiasson knew that they were trading on information obtained from insiders, or that those insiders received any benefit in exchange for such disclosures, or even that Newman and Chiasson consciously avoided learning of these facts."[2] *Id.* at 453. In these circumstances, there is no basis on which the SEC could prevail here.[3]

---

[2] While the SEC can meet its burden with proof of "recklessness," the Second Circuit has also already addressed the issue of whether, in the absence of evidence showing actual knowledge of personal benefit, the Defendants could have or should have understood that there was a personal benefit from the circumstances under which they received the information. The government argued in the criminal appeal that the specificity and accuracy of the information they received should have told them that the insiders must have had a corrupt purpose in disclosing it. *Newman*, 773 F.3d at 454. The Second Circuit rejected this argument on the basis of, among other things, the extensive proof at trial that Dell and NVIDIA routinely and deliberately leaked this type of information, not for the personal gain of any particular employee, but to advance the interests of those companies. *Id.* at 455. Any claim that the Defendants acted recklessly is therefore inconsistent with the *Newman* holding.

[3] In *S.E.C. v. Payton*, No. 14 CIV. 4644, 2015 WL 1538454, at *5 (S.D.N.Y. Apr. 6, 2015), the trial court denied the defendants' motion to dismiss following the withdrawal of a parallel criminal case because it found that the SEC had sufficiently alleged that defendants knew the circumstances of the disclosure of alleged inside information. But in evaluating the defendants' contention that the allegations were insufficient, the court explicitly distinguished *Newman*, noting that, "in contrast to the facts in *Newman*, where the defendants 'knew next to nothing'

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant the Motion.

Dated: October 13, 2015

| | |
|---|---|
| By:   /s/ Gregory Morvillo<br>        Gregory Morvillo | By:   /s/ Stephen Fishbein<br>        Stephen Fishbein<br>        John A. Nathanson<br>        Brian P. Calandra |
| Morvillo LLP<br>One World Financial Center<br>200 Liberty St.<br>New York, NY 10281 | Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>212 848-4424 |
| *Attorneys for Defendant Anthony Chiasson* | *Attorneys for Defendant Todd Newman* |

---

about the tippers . . . the Amended Complaint here alleges that the defendants knew the basic circumstances surrounding the tip." *Payton*, 2015 WL 1538454, at *6.